CELIA McGUINNESS, Esq. (SBN 159420)
DEBORAH GETTLEMAN, Esq. (SBN 267309)
McGuinness Law Group, PC
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 439-2950
Facsimile: (510) 439-2951
cmcguinness@mcguinnesslawgrp.com
dgettleman@mcguinnesslawgrp.com

CATHERINE CABALO, Esq. (CA Bar No. 248198)
KHUSHPREET MEHTON Esq. (CA Bar No. 276827)
Peiffer Wolf Carr Kane Conway & Wise, LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: 415.766.3592
Facsimile: 415.402.0058
Email: ccabalo@peifferwolf.com
kmehton@peifferwolf.com

Attorneys for Plaintiffs
S. O., *by and through her guardian ad litem,* LISA SZILAGYI and LINDA KARR O'CONNOR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S. O., *by and through her guardian ad litem,* LISA SZILAGYI, and LINDA KARR O'CONNOR,<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDENCE SAINT JOHN'S HEALTH CENTER, a California Corporation; PROVIDENCE HEALTH SYSTEM-SOUTHERN CALIFORNIA, a California Corporation; PROVIDENCE HEALTH & SERVICES – WASHINGTON, a Washington Corporation and DOES 1-50, inclusive.<br><br>Defendants. | CASE NO.<br><br>Civil Rights<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>1. **Violation of the Americans with Disabilities Act Title III [42 U.S.C. § 12182, et seq.]**<br><br>2. **Violation of Section 504 of The Rehabilitation Act [29 U.S.C. § 794]**<br><br>3. **Violation of the Patient Protection and Affordable Care Act [42 U.S.C. § 18116]**<br><br>4. **Violation of The California Disabled Persons Act [Cal. Civil Code §§ 54, et seq.]**<br><br>5. **Violation of the Unruh Act [Cal. Civil Code § 51, et seq.]**<br><br>6. **Violation of California Government Code § 11135**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.     Plaintiff S.O. has multiple physical, intellectual and developmental disabilities.  Because of her disabilities she is nonspeaking and uses assistive technology to communicate with others. She requires supervision by caregivers knowledgeable about her capabilities and trained in her communication modalities and equipment.

2.     Defendants own and operate Providence Saint John's Health Center in Santa Monica, California. They have repeatedly discriminated against S.O. by denying her effective communication and other reasonable accommodations of her disabilities while she is a patient at the Hospital. Despite requests from S.O.'s advocates to comply with federal and state anti-discrimination laws, Defendants refuse to provide her the accommodations she needs when she is a patient.

3.     Defendants also discriminated against Plaintiff Linda Karr O'Connor, who is S.O.'s mother, caregiver, and conservator.  They retaliated against her and coerced her to stop her from advocating for her daughter's civil rights and health care needs.

4.     This discrimination is likely to recur because Providence Saint John's Health Center is S.O.'s usual hospital, so both Plaintiffs are likely to return numerous times.  Defendants having rejected all pre-litigation efforts to settle the case, Plaintiffs are forced to file this claim seeking injunctive relief and damages.

**JURISDICTION**

5.     This Court has jurisdiction over Plaintiffs' claims brought under federal law pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367. The State law claims are so related to the federal action that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

## VENUE

6.     Venue is proper in this court pursuant to 28 U.S.C. §1391(b) because Plaintiffs reside in this District, all Defendants are present in and/or perform official duties in this District and the events, acts and omissions giving rise to Plaintiffs' causes of action occurred in this District.

## THE PARTIES

7.     Plaintiff S.O. ("Plaintiff" or "S.O.") is a 32-year-old woman with physical, intellectual and developmental disabilities. Because of these disabilities she cannot perform activities of daily living in the same manner and speed as people without disabilities, including walking, sitting, lying down, speaking, communicating, and making decisions. She needs assistance with most activities of daily living.  She receives in home supportive services from the State of California at the "protective supervision" level, which the state provides to people who cannot safely be left alone.

8.     S.O. is nonspeaking and uses assistive devices to communicate with others.  Her primary mode of communication is the Picture Exchange Communication System (PECS), a standard communication methodology operated through a speech-generating device, which is an alternative assistive technology (AAT).  It is also referred to as alternative assistive communication (AAC). She supplements the AAC with body language and facial clues.

9.     The speech-generating device S.O. uses is a medical device programmed for her individualized needs. It incorporates a particular symbol set familiar to S.O.

10.     S.O.'s caregivers and support persons are trained in the PECS methodology and how to operate her device. They understand her communication needs and style. The support persons' training, coupled with their personal relationship with S.O., enables them to understand S.O. and to facilitate

communication between her and other people.

11.    Plaintiff Linda Karr O'Connor is S.O.'s mother and conservator.

12.    Defendant Providence Saint John's Health Center is a nonprofit corporation that owns, operates, and/or controls Saint John's Health Center in Santa Monica, California, sometimes also known as Providence Saint John's Health Clinic ("the Hospital"). The sole member of its corporation is Defendant Providence Health System-Southern California.

13.    Defendant Providence Health System-Southern California is a California nonprofit corporation ("Providence Health System"). It is a medical services provider responsible, upon information and belief based on publicly available records, for establishing corporate policies and procedures for Defendants here, including the Hospital. The sole member of its corporation is Defendant Providence Health & Services – Washington.

14.    Defendant Providence Health & Services – Washington, is a Washington State nonprofit corporation ("PH&S Washington").  It is the sole member of Providence Health System-Southern California.  On information and belief based on publicly available records, PH&S Washington is responsible for establishing, operating, managing and maintaining the facilities of Providence Health System in southern California, including the Hospital. The Hospital's articles of incorporation require it to carry out the purposes of Defendant PH&S Washington.

15.    Defendants offer secular medical services to members of the public without regard to religious affiliation.

16.    Plaintiffs are informed and believe, and thereon allege, that Defendants and each of them were at all times relevant to the action the owner, lessor, lessee, franchiser, franchisee, general partner, limited partner, agent, employee, representing partner, officer, director or joint venturer of the remaining Defendants and were acting within the course and scope of that relationship.  Plaintiffs are

further informed and believe, and thereon alleges, that each of the Defendants
herein, including their managing agents and owners, gave consent to, ratified and/or
authorized the acts alleged herein by each of the remaining Defendants.

## PLAINTIFF S.O.'s DISABILITY-RELATED NEEDS

17.     The Hospital is located 1.5 miles from S.O.'s home. The Hospital
accepts her insurance. Plaintiff's primary care physicians are affiliated with the
Hospital. As S.O.'s conservator and authorized medical representative, Plaintiff
Karr O'Connor has determined that this is the best location for S.O. to receive
medical care. She intends to continue taking S.O. to the Hospital whenever her
medical needs require.

18.     S.O. needs one caregiver with her at all times, due to her disabilities.
At medical visits, she needs two:  A caregiver to attend to her needs, and her
mother, Plaintiff. Karr O'Connor, to act as her conservator and authorized medical
representative.  At medical visits, Plaintiff Karr O'Connor cannot both serve this
role and care for S.O.'s ongoing needs. S.O. is not able to communicate effectively
with medical personnel by herself. She needs assistance from a caregiver to use her
AAC device.  In addition, S.O. becomes upset and fearful when she is left alone or
finds herself in an unfamiliar location with no one around that she knows or trusts.
Having an additional caregiver/support person available ensures S.O. can
communicate and have her physical needs met at all times.

## DEFENDANTS' HOSPITAL STAFF REPEATEDLY DENY PLAINTIFF'S DISABILITY-RELATED REASONABLE ACCOMMODATION REQUESTS

19.     On September 20, 2022, S.O. and her caregiver Ashley Rivera were
hit by a car while using a crosswalk. S.O. was transported to the Hospital
Emergency Room (ER) for a potential head injury.

20.    On information and belief, Defendants have a policy and/or practice that only one person may stay with a patient in the ER. Staff at the ER would not let both Plaintiff Karr O'Connor and Ms. Rivera stay in the ER triage area with S.O. Plaintiff Karr O'Connor requested that Ms. Rivera be allowed to stay in the triage area to provide treaters with information about S.O., and to help them communicate with S.O. Defendants denied Plaintiff Karr O'Connor's request and removed Ms. Rivera from the triage area.

21.    S.O. was not able to communicate with treaters or answer any questions from them, because she is nonverbal and uses alternate means of communication with the support of a knowledgeable caregiver.  Ms. Rivera is adept at assisting S.O. to communicate.  On information and belief, the treaters had not met S.O. before, were not familiar with her baseline physical condition or means of communication, and therefore were unable to receive any communication from her. In addition, because the treaters were not familiar with S.O.'s means of communication, she could not communicate anything to them.

22.    Ms. Rivera was the only speaking person who knew what happened during and after the accident.  S.O., because of her disabilities, could not communicate to her treaters any information about how she was hit, how she felt or behaved after being hit, or what treatment she received at the scene.  S.O.'s treaters never spoke with Ms. Rivera about any of those issues.

23.    S.O. was admitted to the Intensive Care Unit (ICU) for intracranial bleeding.

24.    Once S.O. was admitted to ICU, the ICU staff allowed both Plaintiff Karr O'Connor and a caregiver to stay with S.O. at all times.  The ICU staff granted Plaintiff Karr O'Connor's request that S.O. be allowed to have two caregivers with her at all times because, as one nurse stated, ICU staff were not familiar with her baseline behaviors and did not understand her physical,

cognative or communication needs. The nurse said that under the circumstances, it was reasonable to modify the hospital's one-visitor policy.

25.    An ICU nurses wrote his cell phone number on his business card and gave it to Plaintiff Karr O'Connor, telling her to have the front desk staff call him directly on his cell phone if she had any trouble getting back into the ICU because of the visitor policy.

26.    At one point during S.O.'s hospital stay, Plaintiff Karr O'Connor left the ICU to pick up necessary items at home. While she was gone, medical staff called and told her she need to return as soon as possible because S.O. was about to undergo an urgent procedure.

27.    When she returned to the hospital, however, Hospital security refused to allow Plaintiff Karr O'Connor to go up to S.O.'s room, even though she explained that ICU staff was allowing two caregivers at bedside because of S.O.'s disabilities. Plaintiffs are informed and believe that the security guards were employees and agents of Defendants and were acting upon Defendants' instructions and/or policies.

28.    Plaintiff Karr O'Connor requested that the security guard call the nurse, handing him the nurse's business card. Security informed her that no one answered their call. She asked specifically whether they called the cell phone number on the business card, and was informed "yes". Later, the nurse called looking for her.  She told him she had not been allowed up because he did not answer the phone. He told her he did not receive any phone call from security, and commented, "I hate it when they do that."

29.    On December 6, 2022, S.O's patella dislocated. Jessica Martinez, S.O.'s caregiver, accompanied her in the ambulance to the Hospital ER. Plaintiff Karr O'Connor drove to the hospital. Before she arrived, ER staff asked Ms. Martinez questions about S.O.'s medical history.  Ms. Martinez did not know the

answers, so she told them that PlaintifF Karr O'Connor could answer them when she arrived.

30. When she arrived, Plaintiff Karr O'Connor tried to give ER staff critical information about S.O.'s medical history. But the ER staff would not listen, insisting that she first go with a security guard to sign in as a visitor at the front desk. Plaintiff Karr O'Connor informed staff that she needed to stay with her daughter because she was the only person authorized to make medical decisions for S.O., but she would register when she was able. Staff insisted she leave the ER to register.  She complied.

31. While Plaintiff Karr O'Connor was registering outside the ER, Ms. Martinez came out to switch places with her in compliance with ER staff instructions that only one person could be in triage with S.O..  However, when Plaintiff Karr O'Connor attempted to go to S.O., a security officer physically barred her and told her that if she didn't leave immediately she would not be allowed to "visit" at all.  Plaintiff Karr O'Connor started to pull out her her phone in order to film the interaction. Security told her that if she started filming she would never be allowed at the Hospital ever again. Afraid of what would happen if she did not comply, Plaintiff Karr O'Connor returned to the waiting room, leaving S.O. alone with no way to communicate with ER staff.

32. Plaintiff Karr O'Connor attempted several times to obtain access to S.O. by presenting the documentation showing she was S.O.'s conservator.  She also presented a  California Department of Public Health (DPH) directive letter issued on Janary 23, 2023, to all California licensed Medical facilities which recommends that patients with physical, intellectual, and/or developmental disabilities should be allowed two support persons at the same time "to ensure support for their mental health and well-being." Defendants' staff refused to review the information being presented to them.

33.     Plaintiff Karr O'Connor made a reasonable accommodation request on S.O.'s behalf that to accommodate her disability-related needs, S.O. be allowed two support persons at her bedside.  ER and security repeatedly denied it.

34.     Plaintiff Karr O'Connor then requested to speak with the nurse manager or the administrator responsible for disability accommodations. Although security staff told her the administrator would be there "momentarily", no one came to speak with her.

35.     The director of S.O.'s day program also went to the Hospital to advocate on S.O.'s behalf for the disability-related accommodation of two caregivers to be present with S.O. in the ER. Defendants' staff initially refused to review the documentation she proffered. They refused to allow two people into the ER with S.O.  The director only prevailed after vociferous and vehement advocacy.

36.     As a result of Defendants' behavior S.O. was was left alone for approximately one hour in the triage area without anyone who could communicate with her.

37.     When S.O. was eventually moved from the ER triage area to an ER treatment room, hospital staff told Plaintiff Karr O'Connor she could meet S.O. in the treatment room. But they would not allow S.O.'s other caregiver to be in the room as well. It took extensive advocacy from S.O.'s day program director before the hospital finally agreed to let a second person join S.O. in ER room.

38.     Plaintiff Karr O'Connor was finally permitted to see S.O., she found that S.O.'s body was twisted.  In addition, her left leg was twitching repeatedly in a muscle contraction (her injury was on her right leg). Correct positioning is essential to keep S.O. from being in discomfort or pain. Correct positioning is something that S.O.'s caregivers know, but a stranger, even ER staff, would not know.  Ms. Karr O'Connor could tell right away that S.O. was in pain and extreme emotional distress.

39.     Later, while S.O. was negotiating getting out of the hospital bed, a nurse —without informing anyone — lifted the back of the bed suddenly. Because S.O.'s medical condition renders her hypotonic, she does not have the muscle control to brace herself.  The unexpected spring of the bed pitched her off balance. If S.O.'s caregivers had not been present, she would have been thrown off the bed onto the floor. This is an example of how S.O.'s care is idiosyncratic, not known to medical treaters who do not know her well.  Having caregivers at her bedside is necessary to ensure that S.O. gets the medical and nursing treatment appropriate to her specific disability-related needs.

**LEGAL ADVOCATES MAKE ADDITIONAL REASONABLE ACCOMMODATION REQUESTS ON S.O.'S BEHALF, WHICH DEFENDANTS REJECT**

40.     Disability Rights California (DRC) is California's largest disability rights organization, a non-profit agency authorized by federal law to provide legal and advocacy support to Californians with disabilities. DRC's work includes direct legal services, impact litigation, structured negotiation, policy advocacy, outreach, and community education.

41.     On April 15, 2024, DRC sent a letter on Plaintiffs' behalf to Katina Thornock, Deputy General Counsel, whom Plaintiffs are informed and believe is an employee and/or agent of Defendants, and each of them. Her email address ends in @providence.org.  The letter laid out the facts and informed Defendants that denying S.O.'s reasonable accommodation of two caregivers at bedside was a violation of federal and state antidiscrimination laws. The letter informed Defendants that the request to have two caregivers with S.O. at all times was a reasonable accommodation request and also is necessary to ensure that she has effective communication.  DRC requested that Defendants modify its policies to grant the reasonable accommodation requests and ensure she has effective communication, as required by law.

42.    DRC concluded by offering to enter into structured negotiation, to resolve the dispute without litigation.

43.    As of the filing of this Complaint, Defendants had not accepted the offer.

## INJURIES

44.    As a result of Defendants denying S.O.'s reasonable accommodation request to have two people with her at all times, S.O. was left alone when she was injured and in pain. She was unable to express her needs, or even to ask to have her mother and caregiver present to help her.  She was left in physical pain and emotional distress.

45.    Treaters were not able to get answers to the most basic questions an emergency patient is asked.  On information and belief, the treaters did not even ask S.O. questions, or they tried, found they could not communicate, and did nothing to ensure communication.  They treated her without having complete and accurate information about her baseline or her injuries. They provided her a lower level of care than a nondisabled person would have received.  They violated her civil rights.

46.    Plaintiff Kar O'Connor was subjected to opprobrium, threats and unwanted negative attention in public simply because she tried to advocate for her child, as was her moral and legal duty. Her civil rights were violated. She experienced emotional distress, extreme stress, and embarrassment, as well as anxiety, fear, and feelings of helplessness because she could not provide S.O. with the care S.O. needed.

47.    Unless enjoined, Defendants will continue to engage in the unlawful acts and in the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' acts and its pattern or practice of

discrimination unless relief is provided by the Court. Accordingly, Plaintiffs are entitled to injunctive relief.

**FIRST CAUSE OF ACTION:**
**Violation of The Americans with Disabilities Act, Title III**
**42 U.S.C. §§ 12182, *et seq.***
**Against all Defendants as to Plaintiff S.O.**

48.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

49.    Defendants Providence Saint John and Providence Health System operate a hospital, which is a place of public accommodation as defined in 42 U.S.C. §§ 12181(7) (F).  The Hospital operates from buildings located at 2121 Santa Monica Blvd, Santa Monica, CA.  Its facilities are open to the general public.

50.    Plaintiff S.O. is a person with a disability because she has a medical condition that affects her neurological and musculoskeletal systems.  Her conditions substantially limits major life activities, including walking, sitting, lying down, speaking, communicating, and making decisions. She cannot perform these activities in the same manner, speed and duration when compared to the average person.  Moreover, she has a history of or has been diagnosed and/or classified as having a physical impairment as required by 42 U.S.C.  §12102(2)(A).

51.    Title III of the ADA prohibits an entity that operates a place of public accommodation from discriminating on the basis of disability "directly or through contractual, licensing, or other arrangements."  42 U.S.C. § 12182 (b)(1)(A)(i)-(iii); 28 C.F.R. § 36.204.  Hence, Defendants are each liable for their own discrimination as well as the discrimination of each other, performed by contract.

52.    As owners and operators of a place of public accommodation, Defendants, and each of them, are required to provide S.O., as a disabled person, "full and equal enjoyment of [its] goods, services, facilities, privileges, advantages, or accommodations."

53.     As the owners and operators of a place of public accommodations, Defendants must ensure that "no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 28 C.F.R. § 303(a).  Public accommodations must "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities."  28 C.F.R. § 303(c). The term "auxiliary aids and services" refers to the methods in which a public accommodation provides effective communication to the individual benefiting from their services. This includes on-site qualified interpreters and accessible electronic and information technology.  28 C.F.R. § 303(b).

54.     Because Plaintiff S.O. is a person with a developmental disability who is nonverbal and uses AAC to communicate, Defendants are each required and responsible to provide necessary accommodations in order to provide her equal access to their programs, ensure effective communication and prevent exclusion, segregation and the denial of services.

55.     Defendants were on notice that Plaintiff S.O. was a person with a disability because her disabilities are visible, because her mother and conservator, caregivers and advocates told them directly, and because they had access to her medical records.  Yet the Hospital failed and refused to make modifications to its programs and services that she requires in order to experience effective communication and equal access to Hospital services.

56.     Defendants, in providing and contracting for the provision of services to Plaintiff S.O., each violate the ADA by, *inter alia*:

    a.  Failing to ensure that their staff communicate effectively with her;

    b.  Denying her the opportunity to participate in and benefit from their programs, facilities, accommodations and activities;

    c.  Affording her an opportunity to participate in or benefit from Defendants' programs, facilities, accommodations and activities that is

not equal to that afforded others;

d.   Providing her with programs, facilities, accommodations and activities that are not as effective in affording an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

e.   Failing to provide reasonable modifications in policies, practices, and procedures when the modifications are necessary to avoid discrimination on the basis of disability and to ensure equal access to Defendants' programs, facilities, accommodations and activities, and such modifications would not fundamentally alter the nature of the programs, facilities, accommodations and activities;

f.   Failing to take appropriate steps to ensure that communication with her is as effective as communication with others receiving the benefits of their programs, facilities, accommodations and activities;

g.   Failing to furnish her with appropriate accommodations necessary to afford her an equal opportunity to participate in and enjoy the benefits of their programs, facilities, accommodations and activities;

57.   Defendants' violations of the ADA have harmed and will continue to harm S.O. in the future.

58.   Because the discriminatory conduct is ongoing and likely to recur, injunctive relief is an appropriate remedy. Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188, Plaintiff prays for relief as set forth below.

**SECOND CAUSE OF ACTION:**
**Violation of The Americans With Disabilities Act, Title III**
**42 U.S.C. §§ 12182, *et seq.***
**Against all Defendants as to Plaintiff Karr O'Connor**

59.   Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

60.     The Americans with Disabilities act also prohibits retaliation, interference, coercion and intimidation against any person who aids a disabled person in asserting their rights under the ADA.  42 U.S.C. §12203 states:

> (a) Retaliation
>
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> (b) Interference, coercion, or intimidation
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

61.     The actions of Hospital staff to prevent Plaintiff Karr O'Connor advocating for her daughter's reasonable accommodation needs, including physically blocking her access and threatening to evict her from the hospital for continuing to advocate for her daughter, and to ban her permanently if she tried to document their behavior on video, were intended to, and did, intimidate and coerce Plaintiff to stop advocating for her daughter, a person with a disability. This behavior interfered with her on account of her having aided her daughter in the exercise of her rights.  This behavior constituted retaliation, intimidation and coercion in violation of 42 U.S.C. §12203.

62.     Because the discriminatory conduct is ongoing and likely to recur, injunctive relief is an appropriate remedy. Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188, Plaintiff prays for relief as set forth below.

**THIRD CAUSE OF ACTION:**
**Violation of Section 504 of The Rehabilitation Act**
**29 U.S.C. § 794**
**Against All Defendants as to Plaintiff S.O.**

63.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

64.    Section 504 of the Rehabilitation Act of 1973 ("Section 504") provides in relevant part: "[N]o otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance" 29 U.S.C. § 794; 24 C.F.R. § 8.4(a).  Federal financial assistance can be direct or indirect.

65.    Plaintiffs are informed and believe that at all times relevant to the Complaint the Hospital is a recipient of federal financial assistance within the meaning of Section 504.  The Hospital's services are a "program or activity receiving Federal financial assistance" because it receives federal funding directly and indirectly through federal medical and social services programs to ensure the provision of its services.  On information and belief, Defendants, and each of them, also receive federal financial assistance for their programs and activities at the Hospital.

66.    Plaintiff S.O. is a qualified individual with a disability within the meaning of Section 504 and is otherwise qualified to participate in, receive benefits from, and/or apply for Defendants' programs or activities pertaining to the Hospital. 29 U.S.C. § 794(b).  She has physical impairments that substantially limit one or more major life activities, including speaking.

67.    Recipients of Federal financial assistance, including Defendants, are prohibited from denying a qualified person with a disability any health, welfare, or other social services or benefits on the basis of disability.  45 C.F.R. § 84.52(a)(1).

68.     Recipients of Federal financial assistance, including Defendants, are prohibited from affording a qualified individual with a disability an opportunity to receive health, welfare, or other social services or benefits that is not equal to that afforded people without disabilities.  45 C.F.R. § 84.52(a)(2).

69.     Recipients of Federal financial assistance, including Defendants, are prohibited from providing a qualified person with a disability health, welfare, or other social services or benefits that are not as effective as the benefits or services provided to others on the basis of disability.  45 C.F.R. § 84.52(a)(3).

70.     Recipients of Federal financial assistance, including Defendants, are prohibited from providing a qualified person with a disability any health, welfare, or other social services or benefits in a manner that limits or has the effect of limiting the participation of qualified individuals with disabilities.  45 C.F.R. § 84.52(a)(4).

71.     Recipients of Federal financial assistance, including Defendants, are required to "provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from [their] services."  45 CFR § 84.52(b).  Auxiliary aids include permitting and facilitating the use of AAC devices for people who are nonverbal.

72.     Recipients of Federal financial assistance, including Defendants, "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." Id. § 84.77(a)(1).

73.     "In determining what types of auxiliary aids and services are necessary, a recipient shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id*. § 84.77(b)(2).

Recipients may not require a companion to interpret for the person with a disability, but are expected to permit companions to assist:

> (i)  In an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or

> (ii)  When the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances.

*Id.* § 84.77(c)(2).

74.    Defendants, through their actions and omissions, denied and are continuing to deny Plaintiff S.O. the benefits of Defendants' programs on the basis of her disabilities and thereby are subjecting her to the very discrimination Section 504 seeks to prevent. Defendants violate Section 504 by, *inter alia*:

   a. Failing to ensure that Hospital staff communicate effectively with her;

   b. Denying her the opportunity to participate in and benefit from Defendants' services, programs, and activities in the Hospital;

   c. Affording her an opportunity to participate in or benefit from Defendants' aids, benefits, or services that is not equal to that afforded others;

   d. Providing her with services that are not as effective in affording an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

   e. Failing to provide reasonable modifications in policies, practices, and procedures when the modifications are necessary to avoid discrimination on the basis of disability and to ensure equal access to Defendants' services, programs, and activities, and such modifications would not fundamentally alter the nature of the services, programs, or activities;

f. Failing to take appropriate steps to ensure that communication with her is as effective as communication with others receiving services through the regional center system; and/or

g. Failing to furnish her with appropriate accommodations necessary to afford her an equal opportunity to participate in and enjoy the benefits of the Hospital, including allowing her to have a communication aide as requested, and two support people with her at all times, as requested.

75. Defendants' violation of Section 504 has harmed and will continue to harm Plaintiff in the future.

76. Because Defendants' discriminatory conduct is ongoing and likely to recur, injunctive relief is an appropriate remedy.

77. Defendants have engaged in policies, practices and customs that discriminate against disabled consumers on a programmatic and systemic basis. In committing the acts and/or omissions described above, Defendants acted intentionally and with deliberate indifference to Plaintiff's rights.

78. As a direct and proximate result of the discriminatory acts and omissions of Defendants, Plaintiff has suffered actual harms and losses Plaintiff seeks and is entitled to actual and compensatory damages.

79. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794(a), Plaintiff prays for relief as set forth below.

**FOURTH CAUSE OF ACTION:**
**Violation of California Government Code § 11135**
**Against All Defendants as to Plaintiff S.O.**

80. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

81. Section 11135(a) of the California Government Code provides in relevant part: "No person in the State of California shall, on the basis of . . . disability, . . . be unlawfully denied the benefits of, or be unlawfully subjected to

discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

82.    The Hospital is "a program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

83.    Plaintiffs are informed and believe, and on that basis allege, that the Hospital and Defendants, and each of them, receive direct funding by the state and/or other financial assistance from the state with respect to its administration of their programs sufficient to invoke the coverage of Government Code § 11135 *et seq*. The Hospital, and Defendants and each of them, have received such financial assistance at all times relevant to the claims asserted in this Complaint.

84.    California Government Code § 11135(b) incorporates the protections and prohibitions contained in the Americans with Disabilities Act and its implementing regulations. In violating the ADA, Defendants have violated the Government Code.

85.    Defendants have violated the terms of California Government Code § 11135(a) independently of their violation of the Americans with Disabilities Act.

86.    Defendants were on actual notice that Plaintiff S.O. is unable to communicate without accommodations.  Despite this, they refused to accommodate her and provide effective communication in her medical care, such that she has equal access to their program and services.

87.    Defendants violated and continue to violate Section 11135 by, *inter alia*:

    a.  Failing to ensure that Hospital staff communicate effectively with her;

    b.  Denying her the opportunity to participate in and benefit from Defendants' services, programs, and activities in the Hospital;

    c.  Affording her an opportunity to participate in or benefit from

Defendants' aids, benefits, or services that is not equal to that afforded others;

d. Providing her with services that are not as effective in affording an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

e. Failing to provide reasonable modifications in policies, practices, and procedures when the modifications are necessary to avoid discrimination on the basis of disability and to ensure equal access to Defendants' services, programs, and activities, and such modifications would not fundamentally alter the nature of the services, programs, or activities;

f. Failing to take appropriate steps to ensure that communication with her is as effective as communication with others receiving services through the regional center system; and/or

g. Failing to furnish her with appropriate accommodations necessary to afford her an equal opportunity to participate in and enjoy the benefits of the Hospital, including allowing her to have a communication aide as requested, and two support people with her at all times, as requested.

88.    Defendants' violations of Section 11135 have harmed and will continue to harm Plaintiff in the future.

89.    Because the discriminatory conduct is ongoing, injunctive relief is an appropriate remedy. Pursuant to the remedies, procedures, and rights set forth in California Government Code § 11139, Plaintiffs pray for relief as set forth below.

///

///

///

1

2

3

**FIFTH CAUSE OF ACTION:**
**Violation of The Unruh Civil Rights Act**
**Cal. Civil Code § 51 *et seq.***
**Against All Defendants as to Plaintiff S.O.**

4       90.    Plaintiffs incorporate by reference the preceding paragraphs as if fully

5   set forth herein.

6       91.    The Unruh Civil Rights Act ("Unruh Act") provides that "[a]ll persons

7   within the jurisdiction of this state are free and equal, and no matter what their

8   disability [or] medical condition are entitled to the full and equal accommodations,

9   advantages, facilities, privileges, or services in all business establishments of every

10  kind whatsoever."  Cal. Civ. Code § 51(b).

11      92.    Defendants are each a non-profit business establishment, with

12  business-like purposes. They own and operate a Hospital that charges fees for

13  medical and other services. It has other businesslike attributes, such as written

14  policies, human resources operations, and contractual relationships with vendors,

15  all of which it conducts at arm's length and in a standard, businesslike manner.

16      93.    At all times relevant to this action, Plaintiff S.O. has been and is a

17  qualified individual with a disability within the meaning of Cal. Gov't Code §

18  12926.

19      94.    A violation of the ADA, as plead above against all Defendants, is a

20  violation of Unruh. Civil Code § 51(f).

21      95.    Plaintiffs also allege a violation of Unruh under Cal. Civil Code §

22  51(b). Defendants, and each of them, violate the Unruh Act by, *inter alia*:

23          a.  Failing to ensure that Hospital staff communicate effectively with her;

24          b.  Denying her the opportunity to participate in and benefit from

25              Defendants' services, programs, and activities in the Hospital;

26          c.  Affording her an opportunity to participate in or benefit from

27              Defendants' aids, benefits, or services that is not equal to that afforded

28              others;

d. Providing her with services that are not as effective in affording an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

e. Failing to provide reasonable modifications in policies, practices, and procedures when the modifications are necessary to avoid discrimination on the basis of disability and to ensure equal access to Defendants' services, programs, and activities, and such modifications would not fundamentally alter the nature of the services, programs, or activities;

f. Failing to take appropriate steps to ensure that communication with her is as effective as communication with others receiving services through the regional center system; and/or

g. Failing to furnish her with appropriate accommodations necessary to afford her an equal opportunity to participate in and enjoy the benefits of the Hospital, including allowing her to have a communication aide as requested, and two support people with her at all times, as requested.

96.    Defendants' violations of the Unruh Act have harmed and will continue to harm Plaintiff S.O. in the future. Because the discriminatory conduct is ongoing and likely to recur, injunctive relief is an appropriate remedy.

97.    Defendants' behavior constitutes intentional discrimination against Plaintiff S.O. under the Unruh Act because it was willful and affirmative misconduct.  Despite Defendants' actual knowledge that Plaintiffs is a person with a disability who requires two support persons with her at all times, and requires effective communication through AAC and a communication aide, Defendants denied Plaintiffs these accommodations. They went to extreme lengths to deny the accommodations, including refusing to look at documents proffered by S.O.'s advocates, physically barring S.O.'s mother from the ER, and threatening her with

eviction if she continued to assert her daughter's rights.

98.     As a direct and proximate result of the discriminatory acts and omissions of Defendants, Plaintiff S.O. has suffered actual harms and losses including but not limited to physical injuries, physical and mental pain, fear, degradation, and severe emotional distress.  Plaintiff seeks and is entitled to actual, compensatory and statutory damages for each incident of discrimination.

99.     Pursuant to the remedies, procedures, and rights set forth in California Civil Code § 52, Plaintiffs prays for relief as set forth below.

**SIXTH CAUSE OF ACTION**
**Violation of The Unruh Act**
**Cal. Civil Code § 51 *et. seq***
**Against All Defendants as to Plaintiff Linda Karr O'Connor**

100.     Plaintiffs incorporates by reference the preceding paragraphs as if fully set forth herein.

101.     The Unruh Act prohibits behavior in resistance to the exercise of the rights of a person with a disability under §52(c) of the Civil Code:

> Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section, and that conduct is of that nature and is intended to deny the full exercise of those rights, . . . any person aggrieved by the conduct may bring a civil action in the appropriate court by filing with it a complaint.

102.     As previously pled, the Americans with Disabilities Act prohibits retaliation, intimidation, coercion and intimidation at 42 U.S.C.A. § 12203.

103.     A violation of the ADA is a violation of the Unruh Act under section 51(f) of the California Civil Code, thus independently justifying an award of damages and injunctive relief pursuant to California law.

104.     Defendants have been engaged in conduct of resistance to Plaintiff S.O.'s exercise of her rights to full and equal access to the Hospital as a person

with a disability.  Defendants have engaged in conduct of resistance against Plaintiffs  Karr O'Connor's efforts to advocate on behalf of her daughter's rights. This conduct of resistance against her is a violation of  section 52(c) of the Civil Code.

105.   Defendants' behavior has subjected Plaintiffs Karr O'Connor to retaliation, interference, coercion and/or intimidation due to her advocacy for her daughter's rights as a person with a disability.  Such unlawful retaliation, interference, coercion and/or intimidation under the ADA is a violation of California law.

106.   As a result of Defendants' behavior, Plaintiffs Karr O'Connor has suffered emotional distress, humiliation, unwanted negative attention and unwarranted public disapprobation.

107.   Plaintiff asserts both that she has standing in her own right to claim violations of Civil Code §§51(c) and 51(f) as stated above, and that she has standing through her association with her daughter, who is a person with a disability.  As to her associational standing, Plaintiff Karr O'Connor has been directly harmed by Defendants' retaliatory, interfering, coercive, intimidating and resistive behavior, as a result of her association with her daughter.

108.   Plaintiffs seek an injunction requiring Defendants to cease retaliatory, interfering, coercive, intimidating and resistive behavior, and actual, treble and statutory damages for each offense, under Civil Code §52(c).

**SEVENTH CAUSE OF ACTION**
**Violation of The California Disabled Persons Act**
**Cal. Civil Code § 54 *et. seq***
**Against All Defendants as to Plaintiff S.O.**

109.   Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

110.   The Disabled Persons Act ("DPA") states:

Individuals  with  disabilities  shall  be  entitled  to  full  and

1

2

3

4

> equal access, as other members of the general public to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all …places of public accommodation…and other places to which the general public is invited subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

5

Cal. Civil Code § 54.1(a)(1).

6

7

111.   The Hospital is a place of public accommodation within the meaning of Cal. Civil Code § 54.1(a)(1).

8

9

112.   Plaintiff S.O. is a person with a disability within the meaning of Cal. Civil Code § 54.

10

113.   Defendants each have and continue to violate the DPA by, *inter alia*:

11

a.  Failing to ensure that Hospital staff communicate effectively with her;

12

13

b.  Denying her the opportunity to participate in and benefit from Defendants' services, programs, and activities in the Hospital;

14

15

16

c.  Affording her an opportunity to participate in or benefit from Defendants' aids, benefits, or services that is not equal to that afforded others;

17

18

19

d.  Providing her with services that are not as effective in affording an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

20

21

22

23

24

25

e.  Failing to provide reasonable modifications in policies, practices, and procedures when the modifications are necessary to avoid discrimination on the basis of disability and to ensure equal access to Defendants' services, programs, and activities, and such modifications would not fundamentally alter the nature of the services, programs, or activities;

26

27

f.  Failing to take appropriate steps to ensure that communication with her is as effective as communication with others receiving services

28

through the regional center system; and/or

    g.  Failing to furnish her with appropriate accommodations necessary to afford her an equal opportunity to participate in and enjoy the benefits of the Hospital, including allowing her to have a communication aide as requested, and two support people with her at all times, as requested.

114.  Plaintiff also alleges a violation of the ADA as incorporated into the DPA, Cal. Civil Code § 54.1(d), by all Defendants.

115.  As a direct and proximate result of the discriminatory acts and omissions of Defendants, Plaintiff S.O. has suffered actual harms and losses including but not limited to physical injuries, physical and mental pain, fear, degradation, and severe emotional distress.  Plaintiff seeks and is entitled to actual, compensatory and statutory damages for each incident of discrimination.

116.  Plaintiff does not request any injunctive relief pursuant to California Civil Code section 55.

117.  Pursuant to the remedies, procedures, and rights set forth in California Civil Code § 54.3, Plaintiffs prays for relief as set forth below.

**EIGHTH CAUSE OF ACTION**
**Violation of The California Disabled Persons Act**
**Cal. Civil Code § 54 *et. seq***
**Against All Defendants As to Plaintiff Linda Karr O'Connor**

118.  Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

119.  Defendants, and each of them, have discriminated against Plaintiff Karr O'Connor and violated her rights under the Disabled Persons Act, §§54 and 54.1 of the California Civil Code.

120.  As previously pled, the Americans with Disabilities Act prohibits retaliation, intimidation, coercion and intimidation. 42 U.S.C.A. § 12203. A violation of the ADA is a violation of the Disabled Persons Act under section

54.1(a)(3) of the California Civil Code, thus independently justifying an award of damages and injunctive relief pursuant to California law.

121. The behavior of Defendants has subjected Plaintiffs to retaliation, interference, coercion and/or intimidation due to her advocacy for her daughter's rights as a person with a disability. Such unlawful retaliation, interference, coercion and/or intimidation under the ADA is a violation of California law.

122. As a result of Defendants' behavior, Plaintiff Karr O'Connor has suffered emotional distress, humiliation, unwanted negative attention and unwarranted public disapprobation.

123. Plaintiff asserts both that she has standing in her own right to claim violations of Civil Code section 54.1(a)(3) as stated above, and that she has standing through her association with her daughter, who is a person with a disability. As to her associational standing, Plaintiff alleges that she has been directly harmed by Defendants' retaliatory, interfering, coercive and intimidating behavior, as a result of her association with her daughter.

124. Plaintiff seeks actual, treble and statutory damages for each offense under Civil Code section 54.3. She does not seek an injunction under Civil Code section 55.

**NINTH CAUSE OF ACTION**
**VIOLATION OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT**
**42 U.S.C. § 18116**
**Against All Defendants as to both Plaintiffs**

125. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

126. At all times relevant to this action, the ACA incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9). Plaintiff S.O. is a person with a disability as defined by the Rehab Act and incorporated into the ACA, 42 U.S.C. § 18116.

127.   At all times relevant to this action, Defendants, and each of them, received federal financial assistance, including Medicare and/or Medicaid reimbursements, and have been principally engaged in the business of providing health care. Therefore, Defendants, and each of them, are health programs or activities receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

128.   Pursuant to the ACA, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

129.   Federal regulations implementing the ACA provide that "[a] covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities. . . ." 45 C.F.R.§ 92.202(a).

130.   Federal regulations implementing the ACA provide that "(1) A [covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 45 C.F.R.§ 92.202(a); 28 C.F.R. § 35.160(b).

131.   Defendants discriminated against Plaintiff S.O. on the basis of her disabilities in violation of the ACA and its implementing regulations, denying her meaningful access to the services, program, and benefits that UCLA Health offers

to other individuals, by refusing to provide reasonable accommodations and auxiliary aids and services necessary to ensure effective communication in violation of the ACA, 42 U.S.C. § 18116.

132.   The ACA, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to "any person aggrieved" by discrimination in violation thereof. 42 U.S.C. § 18116(a). Plaintiff Karr O'Connor is a person "aggrieved" by the discrimination against Plaintiff S.O.

133.   Defendants, and each of them, caused direct injury to Plaintiff Karr O'Connor that is separate from the discrimination against her daughter by barring her from seeing her daughter during emergency treatment, subjecting her to public disapprobation, and threatening her with eviction and a permanent ban for advocating for her daughter's rights under the ACA.

134.   Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with the ACA. As set out above, absent injunctive relief, there is a clear risk that Defendants' actions will recur again with Plaintiffs and other disabled patients and their companions.

135.   Plaintiffs are therefore entitled to injunctive relief; attorney's fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

WHEREFORE, Plaintiffs request relief as outlined below.

## **PRAYER**

Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of Defendants as alleged herein, unless they are granted the relief they request.

WHEREFORE, Plaintiffs pray for judgment and the following specific relief against Defendants:

1.      For a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' practices, policies and procedures subjected Plaintiffs to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, and pendant state law.

2.      For Causes of Action one through five only, for an order enjoining Defendants, their agents, officials, employees, and all persons acting in concert with them:

a.  From continuing the unlawful acts, policies and practices described in this Complaint;

b.  To immediately begin allowing Plaintiff S.O. to have her caregivers and interpreters with her when she is at the Hospital, to ensure she receives adequate healthcare for any other medical issues;

c.  To cease discrimination against Plaintiff S.O. and all other similarly situated disabled patients requiring assistive technology and aides to communicate effectively during hospital services;

d.  Train each of Defendants' employees and agents in accommodating the rights and needs of disabled persons;

e.  Implement nondiscriminatory protocols, policies, and practices for accommodating persons who are disabled and nonverbal; and

f.  To retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, as complained of herein no longer occur and cannot reoccur.

3.      Plaintiffs do not seek injunctive relief under Civil Code section 55.

4.      Award to Plaintiffs all appropriate damages, including but not limited

to statutory damages, general damages, treble damages and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

5.    Award to Plaintiffs all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by federal and state law;

6.    Award prejudgment interest pursuant to California Civil Code § 3291; and

7.    Grant such other and further relief as this Court may deem just and proper.

Date: December 5, 2024                    McGUINNESS LAW GROUP, PC

                                          /s/ Celia McGuinness
                                          _____
                                          By CELIA McGUINNESS, Esq.
                                          Attorneys for Plaintiffs
                                          S.O. by and through her Guardian *ad Litem*,
                                          LISA SZILAGYI
                                          LINDA KARR O'CONNOR


**DEMAND FOR JURY**

Plaintiffs hereby demand a jury for all claims for which a jury is permitted.


Date: December 5, 2024                    McGUINNESS LAW GROUP, PC

                                          /s/Celia McGuinness
                                          _____
                                          By CELIA McGUINNESS, Esq.
                                          Attorneys for Plaintiffs
                                          S.O. by and through her Guardian *ad Litem*
                                          LISA SZILAGYI
                                          LINDA KARR O'CONNOR